# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| AYLISSA M. MURPHY, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:09-CV-434-VEH |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION

Aylissa M. Murphy ("Ms. Murphy") commenced this action on March 6, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of supplemental security income ("SSI") benefits.  For the reasons stated herein, the court finds that the Commissioner's ruling is due to be **REVERSED** and **REMANDED** for further proceedings.

## STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Murphy has accurately summarized the procedural history of this case as follows:

> This matter arises from Melissa Murphy's (hereinafter "the claimant'[s] mother") application for Supplemental Security Income (SSI) disability benefits protectively filed on behalf of her daughter, Aylissa M. Murphy ("Ms. Murphy") on May 4, 2004, alleging disability commencing on January 1, 1996 (amended to March 2003) due to asthma and attention deficit hyperactivity disorder. (Tr. 57-60, 72, 546). Following denial of her claim, Ms. Murphy requested a hearing which was held on October 11, 2005, before Administrative Law Judge ("ALJ") Randall C. Stout. (Tr. 26-32, 544-571).
>
> ALJ Stout denied the claim in an unfavorable decision dated January 30, 2006, and subsequently, the Appeals Council denied Ms. Murphy's request for review. (Tr. 6-20). Thus, a civil action was filed in the United States District Court for the Northern District of Alabama and on June 8, 2007, United States District Judge, Virginia Emerson Hopkins, found that substantial evidence supported the ALJ's denial of Ms. Murphy's childhood benefits but that he did not apply the proper legal standard for the period after Ms. Murphy's 18th birthday, as the ALJ failed to recognize that the sequential criteria used by SSA for determining childhood disability benefits is different from the criteria for adult disability. (Tr. 645-669).
>
> Thus the case was remanded back to the Commissioner with instructions for further proceedings and findings concerning Ms. Murphy's eligibility for adult disability benefits. (Tr. 643, 44). Based on

the court's order, the Appeals Council vacated only that portion of the ALJ's decision that addressed the period beginning with the date Ms. Murphy attained age 18 and remanded only that portion for further proceedings consistent with the order of the court. (Tr. 672). Consequently, a supplemental hearing was held before ALJ Stout on September 17, 2007. (Tr. 598-640A).

In an unfavorable decision dated October 16, 2007, ALJ Stout again denied Ms. Murphy's claim finding that since January 28, 2006, the date she attained age 18, Ms. Murphy retained the residual functional capacity ("RFC") to perform unskilled sedentary work in jobs as a table worker, inspector, and assembler. (Tr. 585-597). The ALJ further found that even though Ms. Murphy suffers from severe borderline intellectual functioning, chronic pansinusitis, allergic rhinitis, and asthma, her depression and anxiety "result in only 'mild' limitations." (Tr. 590).

Consequently, through undersigned attorney, Ms. Murphy submitted to the Appeals Council a "Statement of Exceptions" contending that the ALJ improperly assessed Ms. Murphy's mental impairments; that he should have obtained a medical expert's testimony regarding whether her impairments met or equaled a listed impairment; and that his credibility finding was conclusory. (Tr. 577-583). However, in January 2009, the Appeals Council of the Social Security Administration concluded that the exceptions did not provide a basis for "disturbing" the ALJ's decision. (Tr. 572-574). Accordingly, the ALJ's decision became the Commissioner's final decision.

(Murphy's Brief, doc. 11-1, pp. 1-3).

On March 18, 2009, Ms. Murphy filed her complaint with this court asking for review of the ALJ's most recent decision. (Doc. 1). The matter is ripe for review.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of

disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Ms. Murphy had not engaged in substantial gainful activity since the onset of her alleged disability on January 28, 2006. (Tr. 590). Thus, Ms. Murphy satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ determined that Ms. Murphy "has the following severe impairments: borderline intellectual functioning, chronic pansinusitis, allergic rhinitis, and asthma. (Tr. 590 (citations omitted)). The ALJ found that Ms. Murphy's "depression and anxiety result in only 'mild' limitations . . . ." (Tr. 590).

Accordingly, the ALJ concluded that Ms. Murphy satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Murphy did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 592). Specifically, the ALJ concluded that Ms. Murphy did not meet the listing requirements of Listings 12.04, 12.05, or 12.06. (*Id.*).

At step four, the ALJ determined that Ms. Murphy "has no past relevant work." (Tr. 595). As such, it was necessary for the ALJ to proceed to step five.

The ALJ evaluated Ms. Murphy's residual functional capacity [1] ("RFC") at step five, and found as follows: She can perform unskilled work but cannot work with exposure to pulmonary irritants, temperature extremes, or wetness / humidity." (Tr. 593). The ALJ further noted that "[t]he claimant's ability to perform work at all exertional levels has been compromised by non-exertional limitations." (Tr. 596). Relying on testimony from the vocational expert, the ALJ concluded that Ms. Murphy could perform "the requirements of representative occupations such as table worker,"

---

[1] "Residual function capacity is the most [one] can still do despite [one's] limitations." 20 C.F.R. § 404.1545(a)(1).

and that a significant amount of these positions existed in the national economy. (Tr. 596). The ALJ indicated that a "table worker" is a "sedentary" job.[2] (Tr. 596).

Accordingly, the ALJ concluded Ms. Murphy was not disabled as defined by the Social Security Act at any time from January 28, 2006, through October 16, 2007 (*i.e.*, the date of the ALJ's decision), and denied her SSI claim. (Tr. 596-597).

## ANALYSIS

Ms. Murphy contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with proper legal standards. Specifically, Ms. Murphy asserts that: (1) the ALJ's RFC determination is not based on substantial evidence because "such a finding is not supported by the opinions of any physicians of record"; (2) the ALJ erred by failing to obtain additional medical expert testimony; and (3) the ALJ's rejection of Ms. Murphy's and her mother's testimony regarding

---

[2] The Commissioner defines "sedentary work" as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). "Sedentary work" is the lowest of the "physical exertion requirements of work." 20 C.F.R. 404.1567.

the severity of Ms. Murphy's symptoms constitutes an improper credibility finding. (Murphy Brief, doc. 11-1, p. 1). Because this court agrees with Ms. Murphy's first argument in support of remand, the court will not consider her remaining arguments.[3]

## I. The ALJ did not apply proper legal standards or rely on substantial evidence when assessing Ms. Murphy's RFC.

Ms. Murphy's argument that the ALJ's RFC finding is not based on substantial evidence is fairly straightforward. In essence, Ms. Murphy argues that the RFC determination is not based on an RFC evaluation made by a physician; therefore, according to Ms. Murphy, the finding cannot be based on substantial evidence as a matter of law. In support of that proposition, Ms. Murphy chiefly relies on a holding by the United States Court of Appeals for the First Circuit, *Rivera-Torres v. Sec'y of Health & Human Servs.*, 837 F.2d 4 (1st Cir. 1988).

In *Rivera-Torres*, the record was lacking a physician completed RFC questionnaire or an opinion by a physician that stated in lay terms in what manner the claimant's impairments "might limit his ability to sit, stand, lift, bend or perform

---

[3] Because the court finds that the RFC determination by the ALJ was not in accordance with proper legal standards and not based on substantial evidence, the ALJ will be required to further develop the record with additional medical evidence and will necessarily have to revisit his credibility findings with regard to Ms. Murphy's subjective testimony as to the severity of her symptoms in light of the new evidence. As such, Ms. Murphy's remaining arguments in favor of remand are moot.

other basic work activities." *Id.* at 6.  The Court noted that, "[e]specially where, as here, claimant complains of pain, takes pain medication (motrin), and some objective abnormalities (e.g., muscle spasm, spondyloarthritic changes of the spine) have been found, we think the Secretary should obtain an RFC evaluation from the consultant who conducted the examination." *Id.*  "Despite having no RFC evaluation [from either a medical or a non-medical source], the ALJ concluded that claimant's musculoskeletal problems would not prevent him from performing his past work either as an iron rod cutter or a tomato picker.  We find this conclusion unsupported." *Id.*  Insofar as the claimant's past work as an iron rod cutter, the First Circuit found that

> [w]here, as here, there is no residual functional capacity evaluation, the Secretary's doctor has found a restriction in forward bending ability . . . and a decrease in upper extremity muscle strength, and arthritic changes in the spine are present, we think the ALJ, a lay fact-finder, lacks sufficient expertise to conclude claimant has the ability to be on his feet all day, constantly bending and lifting 25 pound weights. Rather, an explanation of claimant's functional capacity from a doctor is needed.

*Id.* at 6-7. As to the claimant's past work as a tomato picker, the Court found that the work was too remote in time to be relevant and that there was "no evidence in the record of what the tomato picking job entailed in terms of lifting, bending, and

standing." *Rivera-Torres*, 837 F.2d at 7. Because of the lack of such evidence, the Court concluded that the ALJ's determination was "unsupported." *Id.*

Another district judge of this court aptly explained the RFC issue in the context of an ALJ who determined that the claimant was able to perform her past relevant work without the benefit of a physical capacities evaluation conducted by a physician:

> While the Record contains Ms. Rogers['s] medical treatment history, <u>it lacks any physical capacities evaluation by a physician</u>. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. <u>An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person</u>. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). <u>In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required</u>.[4] *Id.* <u>In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations</u>. Further, Ms. Rogers'[s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers'[s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

---

[4] In *Rogers*, the ALJ found that the claimant had the severe impairments of anterior cervical fusion with moderate L4-5 degenerative changes, high blood pressure, obesity, and anxiety. *See Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 3-4) (N.D. Ala. Oct. 16, 2006).

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added);[5] *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), <u>an ALJ, as a lay person, is not qualified to interpret raw data in a medical record</u>.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("<u>An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings</u>, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted).

The Commissioner does not dispute that the ALJ did not obtain an updated physical assessment on Ms. Murphy when assessing her RFC and argues that one was not necessary because the ALJ was able to make a "common sense" finding that is consistent with the "medical and other evidence" of record. (Commissioner's Brief, doc. 13, p. 10). The Commissioner also argues that the ALJ was not required to obtain a physical function assessment from a physician because this court, when it remanded this cause to the Commissioner, "rejected [Ms. Murphy's] argument that additional development of the medical record was required." (Commissioner's Brief, doc. 13, p. 8 (citing Tr. 669)). When making that argument, however, the

---

[5] The court notes that ALJ Randall Stout presided in *Rogers* and in the present case.

Commissioner omits that this court also noted that "the residual functional capacity assessment which may be crucial to a determination of adult disability is neither found nor evaluated under [a child disability benefits] analysis." *Murphy v. Astrue*, No. 2:06-cv-01587-VEH, (Doc. 14 at 14) (N.D. Ala. June 8, 2007). The Commissioner interprets too broadly this court's previous Memorandum Opinion and accompanying Order of remand. The court rejected Ms. Murphy's argument that the record required additional development for purposes of the Commissioner's denial of her application for <u>child's benefits</u>, but this court did not speak to the issue of whether the record required further development with regard to an analysis of Ms. Murphy's entitlement to <u>adult benefits</u>. In short, nothing in this court's previous order of remand <u>precluded</u> further development of the evidentiary record or stated that additional medical evidence or reports were unnecessary.

Insofar as the Commissioner argues that the ALJ made a "common sense" RFC determination, this court finds that such a determination necessarily required an interpretation of raw medical data regarding Ms. Murphy's physical limitations. An ALJ is not qualified to engage in such an exercise. *See Manso-Pizarro*, 76 F.3d at 17, *supra*. Here, as in *Rogers*, the record contains Ms. Murphy's medical treatment

history,[6] but there is no RFC assessment conducted by any physician nor is there any report by a physician that takes into account <u>all</u> of Ms. Murphy's "severe" impairments.

The Commissioner argues that there are, in fact, physical assessments of record and that "Plaintiff acknowledges that state agency consultant physicians reviewed Plaintiff's case in 2003 and 2004 and evaluated her physical condition as non-severe." (Commissioner's Brief, doc. 13, p. 8 (citing Tr. 303-312, 400-407)). This court has reviewed those portions of the record, and notes that the papers are not RFC assessments but are mostly illegible and incomplete forms that were signed by physicians who seemingly examined Ms. Murphy when she was 15 and 16 years old, respectively. Moreover, it is clear from those forms that the physicians did not consider all of Ms. Murphy's alleged impairments. For example, one examiner noted that, when Ms. Murphy was 15 years old, mental testing was still "pending" and that there was not enough evidence with regard to Ms. Murphy's physical limitations to provide a complete report. (Tr. 303). A form completed when Ms. Murphy was 16 years only considered the impairments of "ADHD, obsessive compulsive disorder,

---

[6] Most of the records cited to and relied upon by the Commissioner concern Ms. Murphy's treatment when she was roughly 15-16 years old. There are, according to the parties, approximately 300 pages of additional medical records that were submitted to the ALJ for consideration since this case was remanded in 2007. There is no RFC assessment by a physician among those pages.

depressive disorder, and asthma." (Tr. 400). It omitted any reference to her severe impairments of borderline intellectual functioning, chronic pansinusitis, and allergic rhinitis.

A "Medical Assessment Form (Mental)" was, at the request of Ms. Murphy's attorney, filled out by Ms. Murphy's treating psychiatrist, Dr. Warren Scott, M.D., on June 25, 2007; however, that assessment (on which the ALJ relies when making his RFC determination) does not take into account any physical limitations caused by chronic pansinusitis, allergic rhinitis, and asthma. As such, it is incomplete.

The court also notes, although it was not argued by the Commissioner, that there is not a combination of physical and mental assessments by physicians that could be considered collectively in order for an ALJ, as a lay individual, to properly form an RFC determination in this case. The record is bulging with raw medical data, but volume alone does not support a conclusion that a lay person, such as the ALJ, is not qualified to reach.

Given the complexity of Ms. Murphy's "severe" impairments and the lack of any comprehensive statement by a physician or a group of physicians that puts into lay terms what physical effect those impairments have on Ms. Murphy and her ability to work, the court finds that the ALJ's RFC determination was not based on substantial evidence and that the ALJ has not adequately developed the record on this

point. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

Moreover, the ALJ's conclusion that Ms. Murphy could perform the job of a "table worker" is based on a faulty RFC determination. As a consequence, that conclusion is also erroneous because it is a result of an underdeveloped record and a lack of substantial evidence at the RFC determination stage; so, the finding cannot stand on appeal.

Ms. Murphy is reminded that, as the claimant, she always bears the burden of establishing that she is disabled. "[T]he burden is on the claimant to show that she is disabled and, therefore, she is responsible for producing evidence to support her application." *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006) (citations omitted). This burden is in conjunction with the ALJ's "duty to develop a full and fair record." *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). In this case, the ALJ must obtain an RFC assessment that takes all of Ms. Murphy's severe impairments into account. Ms. Murphy is also responsible for marshaling medical source opinions as to her RFC and for placing such evidence in the record for

consideration. On remand, an appropriate time period should be allowed for the further development and supplementation of the medical evidence.[7]

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. The decision of the Commissioner will be remanded by separate order.

**DONE** this the 6th day of April, 2010.

                                                            */s/ Virginia Emerson Hopkins*
                                                            **VIRGINIA EMERSON HOPKINS**
                                                            United States District Judge

---

[7] This court is not making any finding that limits, in any way whatsoever, what evidence can be submitted to the ALJ on remand. No such limitation should be inferred from this Memorandum Opinion or the accompanying Order.